WR-85,183-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/10/2016 3:59:56 PM
Accepted 6/13/2016 8:12:20 AM
ABEL ACOSTA
CLERK

WR-85,183-01 , WR-85,183-02

| | | |
|---|---|---|
| EX PARTE | § | IN THE TEXAS |
| | § | |
| | § | COURT OF |
| | § | |
| DAVID WAYNE BOSWELL | § | CRIMINAL APPEALS |

**WRIT NOS. CCCR-11-03370-A & CCCR-11-03371-A**
**TRIAL COURT NOS. CCCR-11-03370 & CCCR-11-03371**

| | | |
|---|---|---|
| EX PARTE | § | IN THE 220th JUDICIAL |
| | § | |
| | § | DISTRICT COURT OF |
| | § | |
| DAVID WAYNE BOSWELL | § | COMANCHE COUNTY |

## OBJECTIONS TO TRIAL COURT'S ORDER RECOMMENDING THE DENIAL OF BOSWELL'S APPLICATION FOR A WRIT OF HABEAS CORPUS

In Boswell's applications for writ of habeas corpus filed February 10, 2016, he urged the district court that he was illegally confined and restrained of his liberty, pursuant to convictions for aggravated assault with a deadly weapon and evading arrest, because his trial attorneys were ineffective in three instances and a key witness testified falsely at his trial. In findings of fact and conclusions of law signed May 24, 2016, the court concluded that each claim was meritless. As to each, the court was incorrect. As such, Boswell objects.

FILED

At_____O'clock_____M

JUN 06 2016

BRENDA DICKEY
District Clerk, Comanche Co., TX
_____Deputy

1

## I. Boswell's trial attorneys were ineffective in failing to investigate or present a neurosurgeon in Boswell's defense

In Boswell's application for writ of habeas corpus as to his evading arrest conviction, he first argued his attorneys were ineffective in failing to investigate or present a neurosurgeon to testify about Boswell's injuries' impact on his ability to recognize that the police were pursuing him. A person commits the offense of evading arrest or detention "if he *intentionally* flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." TEX. PENAL CODE § 38.04 (emphasis added). In this case, then, "[a]ny reasonably competent attorney would have realized that" investigating whether Boswell's traumatic head injury impacted his ability to recognize whether the police were attempting to arrest or detain him "was necessary to making an informed choice among possible defenses." *Wiggins v. Smith*, 539 U.S. 510, 525 (2003).

In rejecting Boswell's complaint, the district court found that Boswell's since-retained neurosurgeon, Dr. Ronald H. Uscinski, was not credible; counsel's failure was in fact strategic; and, regardless, there is not a reasonable probability that a neurosurgeon's testimony would have altered the outcome of the trial. On each basis, though, the court overlooked

crucial evidence.

First, as to Dr. Uscinski, the court concluded his affidavit was "equivocal, speculative, and conclusory." To be sure, Dr. Uscinski's initial affidavit conveyed some hesitance:

> it would be helpful to determine the amount of time that had elapsed between the altercation and the time any medical determination of intoxication was made, so as to identify Mr. Boswell's level of intoxication at the time he was driving. Nonetheless, based solely on the above information, I am of the opinion that, if the medical records do contain the alluded-to information, had I been called to testify in this matter I would have appeared and would have testified that Mr. Boswell's injuries and intoxication support his claim that he was unaware of police pursuit.

*See* Memorandum Exhibit F. But the court apparently ignored Dr. Uscinski's supplemental affidavit attached to Boswell's reply to the State's answer. There, Dr. Uscinski explained that, after reviewing the additional records, his opinion had not changed: Boswell's injuries and intoxication support his claim that he was unaware of police pursuit. *See* Reply Attachment.

The court's conclusion that counsel's failure was strategic is no less unsound. The trial record makes clear that counsel's failure to investigate a medical expert resulted from inattention, not reasoned strategic judgment. Boswell's attorneys recognized the issues raised by Boswell's

3

injury, as they argued at closing that he was:

> in a debilitated state, he's been beat to pieces, I mean beat in the head with a shovel, probably ears ringing, all sorts of things and he's just trying to get to medical help? It's easy to understand why he couldn't see anything.

(RR5: 221). In failing to call experts of their own as to the issues with the complainant's allegations, then, Boswell's attorneys only put on a "half-hearted." *See Wiggins*, 539 U.S. at 526 (finding counsel deficient where he put on a "halfhearted" mitigation case—an opening statement and one witness—but failed to investigate mitigating circumstances). This is not strategy—this is ineffectiveness.

Finally, the court's conclusion that Dr. Uscinski's testimony would not have affected the verdict entirely ignores Boswell's argument other-wise. As to *Strickland*'s second prong, a criminal defense lawyer's breach of his duty to investigate may result in a finding of ineffective assistance when "the result is that any viable defense available to the accused is not advanced." *Ex parte Ybarra*, 629 S.W.2d 943, 946 (Tex. Crim. App. 1982). In this case, had Boswell's counsel contacted or investigated calling a neurosurgeon, he would have learned that Boswell's intoxication and head injuries could in fact have rendered him unable to recognize that the police were pursuing him. *See* Memorandum Exhibit F. Not only was

4

the evidence against Boswell relatively thin, but most of it could have been, but was not, effectively challenged by calling a neurosurgeon as a defense expert. Any evidence of Boswell's criminal intent could have been seriously undermined had Boswell's trial attorneys offered the expert testimony that was available, but that they failed to discover. "Armed with the insight and advice of a medical expert, a lawyer could have vastly increased the opportunity to cast doubt on this critical evidence." *Bell v. Miller*, 500 F.3d 149, 156 (2d Cir. 2007). "At the very least, the assistance of such an expert to assist in the cross-examination of the adverse witnesses in this case could have made a significant difference in regard to the outcome of this case." *See Wright v. State*, 223 S.W.3d 36, 44-45 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (finding appellant prejudiced by attorney's failure to consult with expert where an expert could have (1) identified exculpatory evidence and (2) provided testimony about deviations from standard protocol reflected in the complainant's therapy notes and false allegations of sexual assault in connection with divorce proceedings).

For all these reasons, Boswell objects to the district court's findings and conclusions that his first ground is meritless.

5

## II. Boswell's attorneys were ineffective in failing to object to the State's elicitation of testimony as to witnesses' veracity

In Boswell's second ground, he complained that his counsel sat mute while prosecutors goaded Boswell and his wife into testifying that the State's witnesses were lying. It is well-settled that an attorney may not impeach one witness's testimony with the testimony of other witnesses—even where the testifying witness is the defendant. *See Lopez v. State*, 200 S.W.3d 246, 257 (Tex. App.--Houston [14th Dist.] 2006, pet. ref'd) (citing *Ex parte McFarland*, 163 S.W.3d 743, 755 n. 37 (Tex. Crim. App. 2005)); *Temple v. State*, 342 S.W.3d 572, 595 (Tex. App. 2010) *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013).

Nonetheless, the court rejected this claim, too, concluding that counsel's failure was "harmless." Again, though, in so doing, the court ignored Boswell's explanation of why that couldn't be further from the truth. In both *Miller* and *Sessums* the courts considered, in assessing the prejudice from testimony as to a witness's veracity, that the State had emphasized to the jury, during closing argument, the various inadmissible testimony. *See Sessums v. State,* 129 S.W.3d 242, 248 (Tex. App.-Texarkana 2004, pet. ref'd); *Miller v. State,* 757 S.W.2d 880, 884 (Tex. App.-

Dallas 1988, pet. ref'd). And in Boswell's case, the State seized upon counsel's errors almost immediately upon beginning closing argument, pointing to the Boswells' testimony that the State's witnesses were lying:

> We know Chuck Fonville got stabbed. This Defendant wants you to believe that he acted in self-defense, but for y'all to buy that story you have got to completely believe everything David and Tiffany Boswell said, you've got to believe they're one hundred percent telling the truth.
>
> And you also have to believe, to buy their story, that Randy Burns lied, that Kristy Burns lied, that Chuck Fonville lied, that Tiffany Boswell's first cousin Jade Warren lied, that Kristin Scitern, who had been friends with Tiffany Boswell for eighteen years lied, that Kris Scitern, who really didn't have a dog in this deal lied. Who's more likely to lie over this deal? It's the Boswells.
>
> Now, here's how you can tell Tiffany is lying, and if you know Tiffany's lying, because they said the exact same thing, you know he's lying, too....

(RR5: 213). In this case, then, just as in *Miller* and *Sessums*, Boswell's attorneys were ineffective.

## III. Boswell's attorneys were ineffective because they had a conflict of interest

Boswell's final claim of ineffective assistance of counsel concerned his counsel's failure to impeach one of the State's most valuable witnesses, Mason Jade Warren. Boswell surmised that the only explanation

7

for counsel's failure was that counsel had a conflict of interest from also representing Warren.

In rejecting this ground, the court entirely ignored that counsel failed to inform Boswell of his relationship with Warren. The court then concluded that it was not reasonable to infer counsel had a conflict of interest because Warren's DWI conviction—identified by Boswell as being ignored during Warren's cross-examination—was not final on the day the witness testified. But that was hardly the only basis on which counsel failed to impeach Warren. As set forth in Boswell's memorandum in support of his applications, but also ignored by the district court, Warren's aunt provided plenty with which to impeach Warren:

> Mason Jade Warren is my nephew. His father, who has passed on, was my brother. I have known Jade since he was born. My brother and his family lived less than two miles away from my home and we spent time together on a regular basis as the kids grew up.
>
> Although he has never acted out towards me, I have always felt that Jade had a bitter attitude towards others. Others in my family agreed As he grew older, it became more apparent but I felt the chip on his shoulder grew larger after his mother died. This occurred when he was in high school.
>
> I did not personally observe him loose his temper but was told by family members that on more than one occasion he got into confrontations with others at his son's little league games in DeLeon Park and was even requested to leave the park.

Family members have also told me that he and a girlfriend split up because he was physically abusing her.

Family members have also discussed his arrest for a DWI incident. I am unaware of details but have been told he had other run-ins with law enforcement.

On one occasion, l was leaving the grocery store in Gorman as Jade and his son were entering the store. We spoke and he began to tell me about the events that occurred in March of 2011 at the Burns residence where he had been involved in a physical fight with David Boswell.

He basically told me his side of the story but during the conversation he stated, "I should have done the family a favor and killed the SOB!" referring to David Boswell.

If I was called to testify in this case I would have appeared and I would have testified that Mason Jade Warren has a bad reputation in the community in which he lives for truthfulness and for peacefulness and I would have testified that I am familiar with that reputation.

*See* Exhibit G. The finality of Warren's DWI conviction, then, is hardly dispositive.

## IV. The arresting officer testified falsely at Boswell's trial

In addition to counsel's ineffectiveness, Boswell suffered from his arresting officer's false testimony that he was still an officer at the time of trial. *See* Memorandum Exhibit J. The court rejected this last claim because it concluded it was "not relevant to the facts of this case." But,

again, the prosecution's case against Boswell as to the evading charge was thin; the evidence came only from the officer. His credibility was thus paramount. Had the jury known he lied about being a De Leon police officer, and that he had in fact resigned shortly after a citizen complained that he searched her vehicle without any basis upon which to do so, it likely would have viewed his uncorroborated testimony as highly suspicious. Accordingly, on this final basis, too, Boswell objects to the district court's recommendation that relief be denied.

## V. Conclusion

The entirety of the district court's conclusions being incorrect, Boswell respectfully objects to the district court's order recommending relief be denied.

_____
BRUCE ANTON
State Bar No. 01274700
ba@sualaw.com

BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road, Suite 250
Dallas, Texas 75201
(214)-468-8100 (office)
(214)-468-8104 (fax)

## Certificate of Service

I, the undersigned, hereby certify that a true and correct copy of the foregoing Objections to Trial Court's Order Recommending the Denial of Boswell's Application for a Writ of Habeas Corpus was mailed to the Comanche County District Attorney's Office and the 220th Judicial District Court of Comanche County on May 31, 2016.

BRUCE ANTON